# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **EDISON JULES,** : | |
| : | **Case No. 2:11-CV-582** |
| **Plaintiff,** : | |
| : | **JUDGE ALGENON L. MARBLEY** |
| **v.** : | |
| : | |
| **VILLAGE OF OBETZ POLICE** : | |
| **DEPARTMENT,** *et al.*, : | |
| : | |
| **Defendants.** : | |
| : | |

## **OPINION & ORDER**

## I. INTRODUCTION

This matter is before the Court on Defendants' Motion for Summary Judgment (the "Motion"). (Doc. 22.) Plaintiff opposes the Motion. For the reasons set forth herein, Defendants' Motion is **GRANTED IN PART and DENIED IN PART**.

## II. BACKGROUND

### A. Factual Background

In March 2007, Plaintiff, Edison Jules ("Jules"), was hired by the Mayor of Obetz, Rod Davisson, to be a police officer for Defendant Village of Obetz Police Department. Plaintiff is Haitian born. The following episodes from Plaintiff's employment with the Obetz Police Department form the basis for his discrimination suit.

In May 2007, after obtaining an identification card, Jules was concerned that his picture was "to [sic] dark to be seen" and asked his colleagues what he should do about it.[1] Jules's supervisor, Sergeant Robert Rigby ("Rigby") said to Jules, "You've got to go get another card . .

---

[1] According to Jules, "[b]ecause of his particular race, his skin tone and skin composition often cause a non-reflective phenomenon in photographs causing the skin appearance to be totally black as if a shadow." (Doc. 18.)

. nobody can see you in that photo." (*Plaintiff's Deposition*, Doc. 18, at 94-95.)  Rigby then added that Jules could not be seen in the photo because Jules was not smiling, a reference to the visual contrast between Jules's dark skin and light teeth.  Another officer, construing Rigby's statement as a derogatory reference to Jules's race, reported Rigby's statement to then-Chief of Police, Roger Adams.  Chief Adams conducted an internal review consisting of witness interviews, a written statement from Jules, and a meeting with both Rigby and Jules. Chief Adams issued Rigby a warning that similar behavior in the future would be grounds for termination.  Rigby was also required to attend a class or training on either diversity or human relations. (Doc 18, at 101-103.)

In December 2007, Jules and Officer Ryan Debolt ("Debolt"), a non-minority officer, became interested in training to conduct patrols on bicycle.  Debolt turned his application into Rigby.  Rigby, learning that there was also a bicycle training application in Jules's mailbox, removed the application and shredded it while Debolt watched.  Debolt reported the incident to Jules, upon which Jules submitted a written complaint to his sergeant.  Jules and his sergeant both immediately notified the chief of police of the incident.  Kenneth Hinkle ("Chief Hinkle") had become Obetz's chief of police in October 2007.  According to Chief Hinkle, when Jules reported the application incident, "Jules was very upset and unable to speak for several minutes . . . [he] was teary eyed and had difficulty breathing as he attempted to speak."  (*Hinkle Deposition*, at 105, *see* Doc. 35.)  Chief Hinkle brought the incident to the attention of Mayor Davisson.  As a result, and in light of Rigby's previous disciplinary infractions, Rigby was demoted. Jules was transferred to a new command so that he would no longer have to interact with Rigby.

In May 2009, Jules lost consciousness while on duty and was taken to the hospital. After

a five-day hospital stay, he was released and excused from work for seven days.  The physician's note stated "Mr. Jules has been ill.  Please excuse him from work 5/19–5/25/09. He may return on 5/26[.]"  Jules was never told that he would be unfit to perform his duties after he returned to work.  Although Jules was referred to a therapist for his memory, there is no evidence that he ever received memory-related treatment. (Doc. 18, at 169, 177.)

In December 2009, on two separate occasions, Chief Hinkle spoke to Jules in a raised voice and addressed him with profanity, both times in the presence of Jules's immediate supervisor.  Jules later conceded, in his deposition, he did not believe Chief Hinkle's profane comments were motivated by Jules's race. Jules stated that he also overheard Chief Hinkle speaking similarly to a non-minority sergeant.

In February 2010, Jules lost his Blackberry phone, a device which served as both his calendar and primary means of contact when off-duty.  Jules reported the loss of the phone to his supervisor and asked that someone from the police department go to his house to inform him if he was needed when off-duty, as Jules would be unreachable by phone.  No one in the police department informed Jules that his request was unreasonable or would not be honored.  A few days later, Jules failed to appear as a witness in Mayor's Court.  His absence violated Obetz Police Department Directive ("OPDD") 1.29: Requirement to Attend Trials or Hearings.  Mayor Davisson initiated disciplinary proceedings as a result of Jules's purported absence.  In March 2010, Jules attended two pre-disciplinary hearings to address the charge of violating OPDD 1.29.  Although Jules had only been charged with a single violation of OPDD 1.29, at the second pre-disciplinary hearing, Mayor Davisson concluded that Jules had violated OPDD 1.29, neglected other duties prior to missing Mayor's court, demonstrated a lack of trustworthiness and inability to take responsibility for his own conduct, and exhibited an inability to meet the standard

expected of a uniformed officer in the Village of Obetz. (Doc. 22, Exh. D at 4.) Mayor Davisson, with the support of Chief Hinkle, terminated Jules at the conclusion of the second pre-disciplinary hearing. On appeal, the Village of Obetz Council affirmed the Mayor's termination of Jules. (*Hearing Transcript*, Doc. 22, Exh. E.)

### B. Procedural Background

On July 15, 2010, Jules filed charges with the EEOC. The EEOC declined to proceed with the complaint and issued Jules with a "right to sue" letter on April 6, 2011. On July 1, 2011, Jules filed this action against the Village of Obetz Council (the legal entity representing the Village of Obetz) and the individual council members, Louise Crabtree, Greg Scott, John Souders, James Triplett, Bonnie Wiley, and James Wiley, in their official capacities (collectively, "Defendant Obetz"). Jules also sued Chief Hinkle in his official capacity. Jules alleges that his termination gives rise to four claims: a Title VII violation for employment discrimination on the basis of race, color and national origin, 42 U.S.C. § 2000e ("Count One"); violation of Ohio law for employment discrimination on the basis of race, O.R.C. §§ 4112.02, 4112.99 ("Count Two"); violation of federal law for employment discrimination on the basis of disability, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 ("Count Three"); and violation of Ohio law for failing to maintain a non-hostile work environment, O.R.C. §§ 4112.02, 4112.99 ("Count Four"). Counts One, Two, and Three are brought against Defendant Obetz. Count Four is brought against both Defendant Obetz and Defendant Hinkle.

Defendants filed this Motion for Summary Judgment on December 7, 2012, seeking dismissal of all claims. The Motion has been fully briefed, and oral argument held. The Motion is now ripe for adjudication.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides, in relevant part, that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, (1986)).

The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339–40 (6th Cir. 1993). The suggestion of a mere possibility of a factual dispute is insufficient to defeat a movant's motion for summary judgment. *See Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). Further, "summary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248.

When a plaintiff, however, invokes summary judgment "and a showing is made by the [plaintiff], the burden rests on the [defendant] to show that he has a ground of defense fairly arguable and of a substantial character." *Pen-Ken Gas & Oil Corp. v. Warfield Natural Gas Co.,* 137 F.2d 871, 877 (6th Cir. 1943). The necessary inquiry for this Court in determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir. 1993) (quoting

*Anderson*, 477 U.S. at 251–52).  In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party. See *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962).  The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party.  *See Anderson*, 477 U.S. at 251; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995).  Self-serving affidavits, alone, are not enough to create an issue of fact sufficient to survive summary judgment. *Wolfe v. Vill. of Brice, Ohio*, 37 F. Supp. 2d 1021, 1026 (S.D. Ohio 1999).  *See Anderson*, 477 U.S. at 251; *Copeland*, 57 F.3d at 479.

With regard to affidavits, Rule 56 (e) requires that affidavits submitted in support of, or in opposition to motions for summary judgment include facts based on personal knowledge, and that personal knowledge "must be evident from the affidavit."  *Reddy v. Good Samaritan Hosp. & Health Ctr.,* 137 F.Supp.2d 948, 956 (S.D. Ohio 2000).  Affidavits at the summary judgment stage also may not rely upon inadmissible hearsay because inadmissible hearsay "cannot create a genuine issue of material fact." *North American Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1283 (6th Cir. 1997).

## IV. LAW AND ANALYSIS

### A. Race and National Origin Discrimination (Counts One, Two, and Four)

Plaintiff brings his claims of race and national origin discrimination under both state and federal law.  Ohio courts hold that "federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42, U.S.Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112.'" *Ohio Civil Rights Comm'n v. David Richard Ingram, D.C., Inc.*, 630 N.E.2d 669, 672 (Ohio 1994).  Hence, this Court analyzes Jules's state and

6

federal discrimination claims together under Title VII's standard for establishing employment discrimination.

### 1. Statute of Limitations

Defendants assert, as a threshold matter, that Plaintiff's Title VII claims based on alleged discriminatory acts which occurred more than 300 days prior to the filing of Plaintiff's original complaint with the EEOC are barred by the statute of limitations.

Jules filed his complaint with the EEOC on July 15, 2010, making that date the relevant one for statute of limitations analysis. With regard to Count One, the Title VII claim, a plaintiff must file a charge with a state or local agency "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. 2000e-5(e)(1). Thus, Defendants' alleged discriminatory acts prior to September 18, 2009 are time-barred and not actionable. Under O.R.C. ch. 4112, however, the statute of limitations extends for one year. *Lewis v. Cotton Club Bottling Co.,* 87 Ohio App.3d 63, 65 (1993). Hence, for Counts Two and Four, O.R.C. ch. 4112, alleged discriminatory acts which occurred prior to July 15, 2009 are not actionable.

Of the discriminatory acts Jules alleges, only his termination, on May 24, 2010, falls within the actionable time period under either Title VII or O.R.C. ch. 4112. Termination is the archetypal adverse employment action under Title VII. *Ford v. GMC*, 305 F.3d 545, 553 (6th Cir. 2002). Thus, Counts One, Two, and Four – the claims relating to racial discrimination – are not time-barred with regard to Jules's termination.

Although acts that occurred prior to the aforementioned dates are not actionable in themselves, an employee may rely on the prior acts as background evidence in support of a timely claim under Title VII. *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113 (2002).

### 2. Disparate Treatment (Counts One and Two)

Title VII prohibits employment practices that "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "[A] plaintiff may establish discrimination either by introducing direct evidence of discrimination or by proving inferential and circumstantial evidence which would support an inference of discrimination." *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004) (quoting *Kline v. TVA*, 128 F.3d 337, 348 (6th Cir. 1997)).  If a plaintiff relies on circumstantial evidence, the Court employs the burden-shifting analysis announced in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802 (1973).

Whether evidence is direct or circumstantial is not always clear.  "Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."  *Hopson v. Daimlerchrysler Corp.,* 306 F.3d 427, 433 (6th Cir. 2002) (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp*., 176 F.3d 921, 926 (6th Cir. 1999)).  The Sixth Circuit has held that "comments made by individuals who are not involved in the decision-making process regarding the plaintiff's employment do not constitute direct evidence of discrimination."  *Thompson v. City of Lansing*, 410 Fed. Appx. 922, 929 (quoting *Carter v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003)). Plaintiff contends that Rigby's comment about his identification card picture is evidence that race was a motivating factor in Plaintiff's termination.  There is no evidence that Rigby was a decision maker in Jules's termination, while the record does demonstrate that Mayor Davisson made the final decision, with support from Chief Hinkle.  Thus, Rigby's discriminatory acts are not direct evidence that unlawful discrimination motivated Plaintiff's termination.

### a. Prima Facie Case

In the absence of direct evidence, Plaintiff must utilize the *McDonnell Douglas* burden-shifting framework to demonstrate that his termination constituted unlawful discrimination. Plaintiff bears the initial burden of establishing a prima facie case of race discrimination by showing that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was treated differently from similarly-situated employees who were not members of the protected class. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006)).

Defendants concede that Jules's evidence satisfies the first three prongs, but they argue that Jules fails to satisfy the fourth prong. Defendants contend that the "similarly situated" non-minority officers identified by Plaintiff were *not* similarly situated. In order to be "similarly situated," a non-minority employee:

> must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's, without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it .

*Mitchell* 964 F.2d 577, 586 (6th Cir. 1992). Plaintiff counters that there were three such similarly situated employees, two officers and a sergeant, whose conduct was governed by the OPDD and who were subordinate to Mayor Davisson. Officer Short violated OPDD 1.28, Reporting for Duty, and OPDD 1.14, Failure to Report Sick Leave. He was issued two written reprimands for the violations. The ever-notable Sergeant Rigby also violated OPDD 1.28, Failing to Report for Duty. Additionally, the record shows that Rigby was disciplined for the comment on Jules's photo identification, shredding Jules's bicycle training application, and leaving the village in uniform, with a marked patrol car, to attend a social function. (*Hinkle Deposition*, at 122.) For the identification card comment, Rigby was issued a verbal warning and

9

required to watch a video on diversity. For each of the other two incidents, he was demoted. Sergeant McGovern actually assaulted a police clerk and was merely demoted. Neither Short, nor Rigby, nor McGovern was terminated for these disciplinary infractions, each of which is at least as serious as Jules's absence in court. After missing Mayor's Court, Jules was charged with a single violation of OPDD 1.29, Requirement to Attend Trials or Hearings. At the second pre-disciplinary hearing, Mayor Davisson stated, "As a result of your violation of Obetz Police Code of Conduct you are fired." (Doc. 22, Exh. A, at Exh. 1.) At Jules's pre-disciplinary hearing, Chief Hinkle testified that "the citizens of the Village of Obetz rely upon officers to enforce laws for the greater good. Failure to attend criminal proceedings, where Mr. Jules was the only witness, is in [sic] an inexcusable disservice to the public." (Doc 22, Exh. A, at ¶27.) He additionally testified that it is unacceptable to be an unreliable and undependable employee in the law enforcement profession.

Defendants argue that the violations of the officers were factually distinct and warranted varying discipline. There is no evidence, for instance, that any of the other officers missed court dates. The issue is not, however, whether "similarly situated" employees violated the exact same rule, but "whether the white employees were engaged in acts of comparable seriousness." *Mitchell* 964 F.2d 577, 586 (6th Cir. 1992). Here, the offenses of the officers who were not terminated are, at least, as serious as Plaintiff's missed court date. When officers miss shifts, as did Rigby and Short, public safety is immediately endangered. As for McGovern, there are few violations an employee can commit more serious than assaulting a coworker. Jules has adduced sufficient evidence to demonstrate that the three employees he identifies were both similarly situated to Jules and treated differently from Jules. Thus, Jules has established a prima facie case of discrimination.

**b. Legitimate Nondiscriminatory Reason and Pretext**

Once a plaintiff establishes a prima facie case, an inference of discrimination arises and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its decision. *White*, 533 F.2d at 391. Defendants contend that the non-discriminatory reason for Plaintiff's termination was that Jules was unable to meet the standard expected of uniformed officers for the Village of Obetz, a standard for which Defendants have not produced a definition. In addition to the missed court date, Defendant Hinkle has referenced multiple incidents, not substantiated by the current record, purportedly demonstrating Jules's poor judgment and general lack of trustworthiness. Hinkle stated that "[t]rustworthiness is not only an issue of witness credibility in a court of law; it is the fundamental nature of law enforcement service and strikes to the core of the ability to provide appropriate service." (Doc. 22-1, at ¶30.)

Hinkle is correct that a demonstrable record of serious prior discipline could be a legitimate reason to terminate a police officer. The Court assumes, solely for the purposes of analysis, that Defendants have substantiated their allegations, so the burden shifts back to Jules to demonstrate that Defendants' proffered reasons are pretextual. *White*, 533 F.2d at 391. A plaintiff demonstrates pretext by showing the proffered reasons either: (1) have no factual basis; (2) did not actually motivate the employer's conduct; or (3) were not sufficient to warrant the challenged discipline. *Manzer v. Diamond Shamrock Chems., Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

Plaintiff's evidence raises genuine issue of material fact as to whether the stated reasons for his termination were pretextual. The Court notes that the sole disciplinary charge brought against Jules in the proceeding which eventually resulted in his termination was a single instance of missing a court date. During the hearing, there was testimony that Jules may have missed two

11

prior court dates, but the Obetz prosecutor could not clearly recall when those absences occurred or if Jules had been excused. The prosecutor had not even thought the previous absences significant enough to report to Jules's superior. (*Hearing Transcript*, Doc.22-2 at 35-39.) There was also no evidence that Jules had been disciplined in any way for either of the alleged absences. Defendant Hinkle also testified that he verbally counseled Jules for falling asleep on duty, a charge which Jules disputed and for which he did not even receive a written warning. A jury could infer that Defendants' decision to take the drastic disciplinary action of termination for one absence, never having previously disciplined Jules's for the same conduct, was a pretextual reason for Jules's termination. Such an inference would be further supported by the fact that Defendants did not terminate the three similarly situated officers who committed more serious infractions. Thus, given the minor nature and lack of factual certainty regarding Jules's previous discipline, as well as the relatively lenient discipline Defendants have meted out for more serious conduct, a jury could find that Defendants' proffered reasons for terminating Jules either did not actually motivate the employer's conduct or were not sufficient to warrant the challenged discipline. If a jury did find the proffered reasons for Jules's termination to be pretextual, it could also find that racial discrimination was a motive. Thus, summary judgment on Counts One and Two is **DENIED**.

### 3. Hostile Work Environment (Count Four)

Plaintiff also brings a hostile work environment claim, based on allegations of discrimination. Federal case law interpreting Title VII also applies to hostile work environment claims under O.R.C. Chapter 4112. *Ohio Civil Rights Comm'n*, 630 N.E.2d at 672. Hostile work environment claims are analyzed under the *McDonnell Douglas* burden-shifting framework. *Clay v. UPS*, 501 F.3d 695, 706 (6th Cir. 2000).

If at least one of the alleged discriminatory acts falls within the statutory time period, a hostile work environment claim is not time-barred. *National R.R. Passenger Corp.*, 536 U.S. at 122. Here, Plaintiff's termination falls within the time period, thus satisfying the statute of limitations.

To make a prima facie case of a hostile work environment resulting from racial harassment, a plaintiff must show:

> (1) []he is a member of a protected class; (2) [] he was subjected to unwelcomed racial harassment; (3) the harassment was race based; (4) the harassment unreasonably interfered with [his] work performance by creating an environment that was intimidating, hostile, or offensive; and (5) employer liability.

*Id.* (citing *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999)). There is no dispute that Jules is a member of a protected class. Defendants contend Jules has failed to show any of the allegedly discriminatory incidents were motivated by his race and that the alleged incidents were not sufficiently severe or pervasive to support a hostile work environment claim.

### a. Unwelcome Racial Harassment and Harassment Based on Race

In the Sixth Circuit, "[c]onduct that is not explicitly race-based may be illegally race-based and properly considered in a hostile work environment analysis when it can be shown that but for the employee's race, [plaintiff] would not have been the object of harassment." *Clay*, 501 F.3d at 706. The Sixth Circuit holds that non-discriminatory harassment is properly omitted from a hostile work environment analysis. *See Bowman v. Shawnee State Univ.*, 220 F.3d 456 (6th Cir. 2000) (harassing acts not shown to be based on the plaintiff's gender were properly left out of the district court's hostile work environment analysis).

Plaintiff presents the following evidence in support of his hostile work environment claim: Rigby's comment about Jules's identification card; Rigby's destruction of Plaintiff's bicycle training application; and two instances of Chief Hinkle shouting profanity at Plaintiff.

13

With regard to Chief Hinkle, there is no evidence in the record that connects those incidents to Plaintiff's race.  In fact, in Plaintiff's deposition, he stated that he did not believe Chief Hinkle shouted at him because of Plaintiff's race.  In light of Jules's admission, and the lack of contrary evidence to suggest that the incidents did have some connection to race, the Court does not consider the Chief Hinkle incidents in the hostile work environment analysis. Rigby, however, actually made derogatory comments about Jules that referenced Jules's race.  Thus, with regard to Rigby, Plaintiff has shown he was subjected to unwelcome racial harassment that was based on his race.

### b. Severe or Pervasive

Plaintiff, having satisfied the first three prongs of the analysis, must also show the alleged acts were "severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22, (1995).  To determine whether workplace harassment is pervasive, courts consider, inter alia, "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance." *Id*., at 23. This approach encompasses both an objective and subjective standard.  Since the question is not susceptible to a "mathematically precise test," courts look at the totality of the circumstances, rather than analyze the alleged comments and conduct individually. *Id*., at 22-23.

Plaintiff alleges that the identification card comment and the destruction of his bicycle training application, both acts by Rigby, created a hostile work environment.  The record indicates that there were two racially discriminatory incidents involving Rigby in 2007.  Defendants contend that the incidents upon which Jules relies do not rise to "severe and

14

pervasive" conduct as defined by Sixth Circuit precedent. *See Clay v. UPS* (stating fifteen incidents over two years, most of which were "mere offensive utterances," were not severe or pervasive enough to be actionable); *Burnett v. Tyco Corp.*, 203 F.3d 980, 985 (6th Cir. 2000) (holding that a battery coupled with three offensive remarks over a six-month period were not sufficiently severe to create a hostile work environment). Although Defendants took some action after these incidents, a genuine issue of material fact remains as to whether, or the extent to which, these incidents and Rigby's treatment of Jules "unreasonably interfered" with Jules's job performance. The animosity Rigby showed towards Jules continued for months, even after Rigby's initial discipline, harrying Jules for approximately his first nine months on the job. When Jules met with Chief Hinkle immediately after the incident with the bicycle training application, he had been reduced to tears. Moreover, Jules never received the bicycle training he sought. That training arguably would have expanded Jules's portfolio of responsibilities on the job; imposing a barrier to that training would "unreasonably interfere" with job performance. Hence, a jury could reasonably find that Rigby's actions unreasonably interfered with Jules's job performance and prevented him from advancing within the department. Defendants' Motion for Summary Judgment on Jules's hostile work environment claim is, thus, **DENIED**.

### B. Discrimination Based on Disability (Count Three)

The *McDonnell Douglas* burden shifting analysis already discussed applies to ADA claims as well. *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011). In *Whitfield*, the Sixth Circuit held that a plaintiff makes a prima facie case of disability discrimination in employment by showing:

> (1) he or she is disabled, (2) otherwise qualified for the position, with or without reasonable accommodation, (3) suffered an adverse employment decision, (4) the employer knew or had reason to know of the plaintiff's disability, and (5) the

> position remained open while the employer sought other applicants or the disabled individual was replaced.

*Id*. at 258-259. For claims brought under 42 U.S.C. § 12112, "[a]lthough non-disabled individuals may bring claims under some provisions of the Act, the plain text of subsection (b)(6) only covers individuals with disabilities. The text of subsection (a) and (b)(6) specifically refers to 'qualified individual[s] with disabilit[ies],' and not… a broader class of individuals such as 'employees.'" *Bates v. Dura Auto. Sys., Inc.*, 625 F.3d 283, 285 (6th Cir. 2010) (*See* 42 U.S.C. § 12112(a), (b)(6)).

Defendants contend that Jules was not a qualified individual with a disability and that Defendants did not know, nor did they have reason to know, that Jules may have been disabled. The ADA defines "disability" as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C.S. § 12102(2).

Plaintiff has failed to adduce any admissible evidence that he has a disability under any of the three definitions. At most, he has produced evidence that he was hospitalized and subsequently cleared to return to work. Plaintiff states that he was told by an unnamed neurologist that his condition could cause memory issues. There is no medical documentation of any memory issue, nor is there a statement from any physician to suggest Jules may have had a memory problem. Plaintiff's statement regarding the neurologist's statement alone does not raise an issue because hearsay evidence "cannot be considered on summary judgment." *Jacklyn v. Schering-Plough Healthcare Products Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999).

There is also insufficient evidence to suggest that Defendants believed Plaintiff might have a disability. Plaintiff claims that Chief Hinkle was present when the neurologist diagnosed him with a brain aneurysm, but there is no other evidence in the record that the medical event

was ever diagnosed as an aneurysm, or that the aneurysm actually resulted in memory issues. Plaintiff also states that he told his supervisor that he was experiencing memory issues. There is also no evidence that Plaintiff's supervisor was informed that Plaintiff's memory lapses were due to impairment. An employer cannot discriminate against an employee on the basis of a disability when it is unaware that the disability exists. *Simpkins v. Specialty Envelope*, 94 F.3d 645 (6th Cir. 1996) (unpublished).

Plaintiff has, thus, failed to demonstrate there is a genuine issue of material fact as to whether he had disability or Defendants perceived him to be disabled. Defendants' Motion for Summary Judgment on Plaintiff's ADA claim is, thus, **GRANTED**. Count Three is **DISMISSED**.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED IN PART and DENIED IN PART.** Summary judgment is **GRANTED** on Count Three under the ADA, 42 U.S.C. § 12112. Count Three is **DISMISSED**. Summary judgment is **DENIED** as to: Count One, under 42 U.S.C. § 2000e; Count Two, under Ohio Rev. Code §§ 4112.02 and 4112.09; and Count Four under Ohio Rev. Code ch. §§ 4112.02 and 4112.99.

**IT IS SO ORDERED.**

                                                     s/ Algenon L. Marbley
                                                    **ALGENON L. MARBLEY**
                                                    **UNITED STATES DISTRICT JUDGE**

**DATED: September 11, 2013**